The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States in this honorable court. All right, everybody. Welcome this afternoon. Sorry for the bit of delay. We had some technical glitches we had to iron out. But as you know, we just have the one case this afternoon, and it is 23-10718, Garland. We appreciate the supplemental briefing that we've received. And with that little bit of intro, Mr. Stern, why don't you kick us off? Thank you very much, Your Honor. And I've got my colleagues sitting here with me in case there are questions that they can answer better than I can. But determining whether to grant the application in this case, the Supreme Court basically was considering three possibilities. One was to grant the request for vacate or enfold. Second, the government offered as a lesser, certainly less preferred alternative, to vacate but not vacate with respect to the parties. And finally, of course, the court could simply have denied it. And the government also asked that if the court wasn't going to grant the stay in full, that it could consider the petition as a petition for cert before judgment. Now, the court picked the first of those options and stayed in full. And with respect, what the district court here has done is to say, no, it's really that second option about a much more limited ruling, which the court had in front of it. It was certainly briefed to the hilt by the parties. It's the same record. It's nothing new that might have been a basis for a court to go, there's something here the Supreme Court hadn't looked at it, didn't know about. So I'm not going to issue an order based on that. But that's clearly not the case here. And district court instead invoked what's regarded as the law of the case and issued an injunction. And it is that... I'm sorry, your honor. No, I think there was just some background noise. Go right ahead. Um, so we think that this is simply a case in which the Supreme Court has spoken on this question as to whether the rule should stay in effect, ending this court's consideration and possible consideration by the Supreme Court itself. And as to that, we think the court has ruled definitively. Obviously, this court's own consideration on the merits and its own appraisal is not sort of like governed except to the extent that the court regards it as some sort of guidance. The Supreme Court has not spoken to that. But the court has very clearly, we think, spoken to the precise question of should there be a stay? Mr. Stern, what do you make of the distinction between staying the vacature and providing injunctive relief justice to the parties before the court? I take it that those are pretty different remedies. And one could understand that perhaps a vacature, as the district court ordered and that was stayed by the Supreme Court, looks sort of like a universal injunction in the sense that it prohibits the rule from going in effect as to anybody. But I'm not sure that that's an injunction. Whereas an injunction is much more limited, arguably, and it simply prevents the enforcement of the rule as to the parties before the court. Well, you're certainly right to remember that an injunction that's limited in that way is different from a vacate or an injunction, as the court is well aware. Courts often issue nationwide injunctions, and the as a practical matter, what we have here, it's the same thing. And if we look at what was filed in the Supreme Court, it's absolutely clear that the Supreme Court understood what was happening and what the impact was going to be. Because the various respondents, the plaintiffs and interveners in this court, stressed the harm to themselves. And they all said, look, if you're going to grant this at all, you should limit this to the, like, you should at least limit the state so it doesn't include us. And they discussed the irreparable harm to themselves, and why it was so important for the court to at least limit its ruling in that way. And the government for its part in its reply said, no, that's not what you should do. And they're wrong. And they aren't suffering that kind of irreparable harm. So the Supreme Court understood entirely what the impact was going to be about this. And in this kind of a situation, like the, you know, I'm not saying because it's a universal matter, but it's applied in this particular case, the impact of a vacater as opposed to an injunction, like a limit, a limitation on the vacater, as opposed to an the same, because... Are you arguing that the Supreme Court, having heard the arguments, could have stayed the vacater in part, but chose not to do so? Is that what you're arguing? Yes, Your Honor. And that was what the parties, well, nobody said that the Supreme Court couldn't have done that. The United States specifically asked for that. The respondents said, if you're going to, like, stay, you should do a stay that does not encompass us, that would be limited. So this was absolutely before the Supreme Court. And nobody was suggesting that the court couldn't have done that. Mr. Stern, I want to make sure I if we grant the stay, right, of the preliminary injunction, and the rules obviously in effect, is the government's plan to prosecute people like Blackhawk if they don't stop selling their parts? Well, I mean, I can speak for ATF, which doesn't itself, you know, prosecute. But the we take the kinds of steps that ATF can, yes, that's why we went to the Supreme Court. And what about customers? The customers thing was interesting to me, because you point out that, like, well, you know, obviously, there's some people that can't buy guns. But imagine somebody who is lawfully allowed to purchase a firearm. So it's not any kind of prohibited person of any sort and just decides to buy one of these parts. The part is not made in accordance with the final rule. That's not serialized. It's indexed in violation of the rules, all the various things the rule prohibits. So the part is clearly covered by the rule, but it's just a customer, just a normal American. What is the plan of the United States government as to that person? There is, you know, as your Honor notes, we, you know, sort of set in regard to this court's with unless the there was a independent prohibition, right, so you're a felon in possession. Absent that, no. Nothing as to normal people, just normal Americans, law-abiding Americans. That's right. This is about, this is a commercially, like, oriented restriction. Yes, would ATF want to enforce this against manufacturers? Absolutely. That's why we've been seeking relief, but that's the relief we're, that's what we want to be able to do. Judge Will, I think you're muted. Mr. Stern, thanks for that. You've got a couple minutes reserved on rebuttal, so we'll hear back from you in a few. Mr. Flores, the floor is yours. Please, the court. Let me talk first about what the decree actually says, the distinction between vacator and an injunction, and let me say one thing about what the decree necessarily holds, what it necessarily entails. The distinction between vacator and injunction is very real, very material, and critical to this case. This stay is not a stay in toto, it is limited. That stay's limiting language, insofar as they vacate the final rule, has to have some limiting meaning. We give it that meaning, as the district court did, by saying that the Supreme Court stayed its decision to issue this particular remedy, but did not stay decision to uphold our rights and possibly vindicate them with another remedy. ATF gives that language no meaning whatsoever. Under their view, the stay we have is just like a stay that would have stayed these two decisions in toto, and that cannot be the correct reading of this decision. Now let me say one critically important thing about what this decision necessarily entails, because ATF's position is that this stay necessarily entails a holding about the issues, but that is not the test. Don't take my word for it. Look at page 15 of ATF's application for the stay. This is the stay application that they filed in the Supreme Court. They cite Merrill v. Milligan, which is the Kavanaugh opinion that correctly articulates the standard for stays in the Supreme Court. They did not have to show a likelihood of success. What they had to show was a reasonable probability of cert being granted, which is not at all inconsistent with our position, and a fair prospect of success. A fair prospect of success is all that they had to show, and that is a far cry from a likelihood of success. Footnote two of the Merrill v. Milligan decision, a decision that they put in front of the Supreme Court, explains this, that a fair prospect of success is nothing at all like a likelihood of success. Both parties in the case can have a fair prospect of success. So when they argue that getting the stay necessarily entails a likelihood of success on one of their substantive arguments, they are wrong because of the own authorities that they put before the Supreme Court. There must be a way to reconcile this stay with the limiting language, and our position is the only one that doesn't. There are a lot of remedial arguments in this case. The court will recall that ATF itself is pounding the table in the actual merits, saying that an injunction is dramatically different than a vacator. They are the ones saying essentially that nationwide vacators aren't a thing. I don't understand ATF's position today compared to their position on the merits. Is it or is it not possible to vacate a rule as to one party? I can't tell what their position is, and I don't think we can necessarily imply that the Supreme Court upholds some view of that in this stay. The stay only does what the decree actually says, and all that it actually says is that the vacator has been stayed, and what we got is necessarily entailed as a holding beyond that. The last thing I'll talk about is the equities of this case. Recall that my client, Defense Distributed, received a preliminary injunction for months, and during a month-long period, ATF appealed but did not try to have our injunction stayed, and so they really lose credibility by coming to court now and saying that the world sky will fall if Defense Distributed alone has an injunction because we had it for months and they that is a critical part of the equities that they ignored here. If the court has no further questions, I'll yield back the remainder of my time. Okay, Mr. Flores, thank you very much. Mr. Sullivan, we'll hear from you. Thank you, Your Honors, and Mr. Flores and I unfortunately did not coordinate our argument, so there's likely going to be some overlap between the two since both of our respective clients are equally positioned. I would like to start, Your Honors, by suggesting that the government's principle relief sought through the stay with the Supreme Court had to do with its concerns about the nationwide vector by the district court judge. If you read the government's 40-page initial petition, it focuses principally on that, suggesting the district court did not have the authority. I know the government has represented in some of the papers that the parties, including the government, provided an opportunity for the Supreme Court to limit its stay to non-parties. My best memory, Your Honors, in reading the government's briefs, which I think total somewhere around 70 pages, there might be one or two throwaway lines that suggested to the Supreme Court if you're not inclined to issue a stay without any limits and limit the stay to non-parties. I would suggest, Your Honor, that is not something that was likely, you know, fully considered. And when Justice Alito issued the initial administrative stay, and I think that was on July 28th in response to the government's request, Your Honor, it did not have any limiting language in there at all. It generally stayed both the judgment and the order and the judgment of the district court. After receiving briefs, the stay has that insofar as limiting language. That certainly means something. It has meant something in other stay requests. It does not preclude any jurisdiction or any authorities outside the specific stay with the district court. And I thought the district court did an excellent job describing the reasons why the district court retained its equity rights, equity authorities, notwithstanding the stay by the And insofar as language is limited to the vacateur of the rule, it doesn't mean that the district court doesn't have any other authorities or remedies to pursue. Your Honor raised the question about whether or not the government intends to prosecute the two principal parties that are before the court. And based on the government's direct response to the court and the government's representation today, it appears that it will, notwithstanding the fact, Your Honor, that the plaintiffs, the appellees in this particular action have persuaded and convinced based on the evidence that the government is wrong with regards to the rule as it applies to these two particular plaintiffs, and that the plaintiffs have a likelihood of success, which obviously resulted in the initial injunction by the court. And this court, you know, certainly has had the benefit of both the pleadings as well as the recent oral arguments and respectfully are in a good position to understand the likelihood of success by these appellees. Your Honor, I think the government wants this court to believe that the United States Supreme Court's state order is broad and precludes or prevents the district court or this court from taking any further action, including equity on behalf of the plaintiffs. And we would retain both the jurisdiction and the right to frame some type of relief that would protect these parties during these proceedings. All right, Mr. Sullivan, thank you for that. Mr. Stern, we're back to you. You have two minutes on rebuttal. If there are any questions, like, you know, obviously that would be what I most want to do. Again, I think that that discussion illustrates the extent to what is being talked about here is precisely what the parties talked to the Supreme Court about. Both parties talked about the possibility of limiting the injunction. The point, I think, you know, obviously I could give the court the site, you know, but and the government in its reply, I think it's around page 16, responds about like directly takes on the assertion that there would be no injury to the government and that those plaintiffs had would in fact incur irreparable harm. This was all before the Supreme Court. It was all on precisely the same record that the district court has now ruled on and as to the sort of like it is vacated in so far. I'm falling over, but the court's language that is cited as being limited, that appears in other kinds of other Supreme Court orders issuing stays, and here in particular, the, and it's noted on page 20, the final page of the government's reply. They've been pointed out to the solicitor general that we had not sought a stay of the district court summary judgment order, which also reported to vacate the rule, and the footnote 4 explains that we didn't think that was necessary, but to the extent that the court thought that it was, we wanted to be clear we were seeking relief of that too. You know, the sort of the Supreme Court's order covers that, and it also like there were other things going on in that summary judgment motion other than the vacator, and obviously the Supreme Court wasn't saying that either, so there's no need to assume that any language is being disregarded here. Mr. Stern, what is your response to Mr. Flores's focus on the formulation, the fair prospect versus likelihood of success formulation? I mean, the first, I think the key point is the Supreme Court issues a stay that's, you know, it uses the, you know, the argument, you know, it does it based on like its own formulation, and there really is no reason to go further. I would point out that this view was about to the burden, the government's burden was supposedly not so great in this case. It's very much at odds with the propositions that were being advanced to the Supreme Court in opposition to the motion, particularly refer the court to the opposition of tactical machinery, which sort of emphasizes that because this matter is pending in the court of appeals and the government court of appeals denied the motion for a stay, the government has an especially heavy burden with citations. This comes after citing the general standard, and then it tells the Supreme Court that in a case like this, the court will balance the equities and weigh the relative harms to the applicant and to the public interest, citing a Justice Kavanaugh decision. So I think that everybody knew what was going on. The Supreme Court issued its ruling, it did it according to its own standards, and that we do think is the binding on this particular question. Okay, well, thank you all. We do and the court will stand adjourned. Thank you all. Thank you very much.